MINOR TEAGUE *et ux. v.* MARY SOWDER *et al.*

(*Knoxville.* September Term, 1908.)

1. **EVIDENCE.** A latent ambiguity of a writing is what.

A latent ambiguity is one where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used. (*Post, p.* 148.)

Cases cited and approved: Weatherhead v. Sewell, 9 Humph., 295.

2. **SAME.** A patent ambiguity of a writing is what.

A patent ambiguity is one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts or proof of declarations can restore the doubtful sense without adding ideas which the words used do not sustain. (*Post, p.* 148.)

Case cited and approved: Weatherhead v. Sewell, 9 Humph., 295.

3. **SAME.** Ambiguity in a writing removable by parol evidence is what.

An ambiguity in a writing which may be removed by parol evidence is not a doubt thrown upon the intention of the party in the instrument by extrinsic proof tending to show an intention different from that manifested by the words of the instrument, but is one growing out of the question of identity of the person or subject mentioned in the instrument. (*Post, p.* 149.)

Teague v. Sowder.

Cases cited and construed:  Weatherhead v. Sewell, 9 Humph., 295;  Harrison v. Morton, 2 Swan, 469;  Gourley v. Thompson, 2 Sneed, 391;  Eatherly v. Eatherly, 1 Cold., 464;  Horton v. Thompson, 3 Tenn. Chy., 581;  Clark v. Clark, 2 Lea, 725.

4. **SAME.** Grantor's declarations and other instruments are inadmissible to reform a registered deed as against subsequent purchasers, when.

In a suit, where the original deed was lost, for the reformation of a registered deed, under which subsequent purchasers held the land without notice of any error in drafting the deed or in its registration, upon the ground of an alleged clerical error in the registration affecting the estate conveyed, the declarations of the grantor as to the character of the estate intended to be conveyed, made at the time of the execution of the registered deed, and two undelivered deeds by the same grantor to the same grantees, one of a prior date and one of even date with the registered deed, are inadmissible as against such subsequent purchasers, because they cannot be required to look beyond the phraseology of the deed itself as recorded on the register's books.  The intention as to the character of the estate granted must be ascertained from the instrument, in this case, as registered.  (*Post, pp.* 144-150.)

Case cited and approved:  Davis v. Smith, 9 Humph., 559.

5. **VENDOR AND VENDEE.** Purchaser of land is chargeable with recitals of deeds in his chain of title, and of what other facts.

Purchasers of land are fixed with notice of the recitals of the deeds in their chain of title, and are chargeable with notice of the proper construction of such deeds, and of every fact with which, with reasonable prudence or diligence, they ought to become acquainted.  (*Post, pp.* 150, 151.)

6. **SAME.** Same.  Purchaser of land is chargeable with notice of clerical errors in deed in chain of title or in its registration, when.

If the context of a registered deed in a purchaser's chain of title shows a clerical error by the draftsman thereof or by

the copyist who transcribed it on the register's books, the purchaser would be chargeable with notice thereof, and would be put upon inquiry. (*Post*, *p.* 151.)

7. **REMAINDERS.** Remainderman is not estopped by failure to sue or assert title during the existence of the life estate to sue afterwards for reformation of deed.

A remainderman or reversioner cannot maintain a suit to recover the land, and is not bound to assert his title, during the existence of the life estate, and his failure to do so does not constitute laches; nor does his standing by and allowing the life tenant or those claiming under him to enjoy the property as owners in fee and to develop it without objection constitute laches which will estop him from instituting a suit for the reformation of the deed, on the ground that it created only a life estate in the first taker with remainder to him. (*Post*, *pp.* 151-153.)

Cases cited and approved: McCorry v. King, 3 Humph., 275; Marr v. Gilliam, 1 Cold., 502; Dodd v. Benthal, 4 Heisk., 608; Aiken v. Suttle, 4 Lea, 109; McBroon v. Whitfield, 108 Tenn., 422.

8. **SAME.** Same. A married woman as remainderman not asserting title against life tenant and purchasers in fee is not estopped, when.

The fact that a married woman who was a part of the time an infant while claiming a remainder estate in land which was sold in fee by the alleged life tenant, her mother, resided at one time within two miles, but most of the time within five miles of the land while it was occupied and improved by the purchasers, and asserted no right therein for nearly twenty-five years, will not estop her to assert her claim to the land after the termination of the life estate. (*Post*, *pp.* 151-153.)

Case cited and approved: Dodd v. Benthal, 4 Heisk., 601.

Teague v. Sowder.

9. **DEEDS OF CONVEYANCE. To a named person without word "heirs" passed only a life estate at common law.**

At common law a deed to a designated person by name, omitting the use of the term "heirs," passed only a life estate, although it purported to convey the land to the grantee forever, or to him and his assigns forever. (*Post, p.* 154.)

10. **SAME. Creating life estate with remainder to heirs gave first taker absolute estate under the rule in Shelley's Case.**

Where a deed purports to convey to the first taker an estate in land for his lifetime, with remainder to his heirs, it would create, at common law, under the operation of the rule in Shelley's Case, an absolute estate in the first taker, to the exclusion of his heirs. (*Post, p.* 154.)

11. **SAME. Creating life estate with remainder to heirs gives heirs remainder estate under statute abolishing rule in Shelley's Case.**

Where a deed conveys a life estate to a person, with the remainder to his heirs, the heirs will take a remainder estate, if that was the grantor's intention as expressed in the deed, under our statute (Shannon's Code, sec. 3674) abolishing the rule in Shelley's Case by providing that where a remainder is limited to the heirs, or to the heirs of the body, of a person to whom a life estate in the premises is given, the heirs or the heirs of the body of such tenant shall take as purchasers by virtue of the remainder so limited to them. (*Post, p.* 154.)

Code cited and construed: Sec. 3674 (S.); sec. 2814 (M. & V.); sec. 2068 (T. & S. and 1858).

Acts cited and construed: Acts 1851-52, ch. 91, sec. 1.

12. **SAME. May create a fee simple estate without word "heirs" under our statute, when.**

Under our statute (Shannon's Code, sec. 3672) providing that deeds shall pass all the estate or interest of the grantor, unless an intention to pass a less estate appears from the deed, a fee simple estate may be conveyed without the use of the word "heirs." (*Post, pp.* 154, 155.)

Teague v. Sowder.

Code cited and construed: Sec. 3672 (S.); sec. 2812 (M. & V.); sec. 2006 (T. & S. and 1858).

**13. SAME.** Technical rules of construction have been abandoned; the intention must govern.

Technical rules in the construction of conveyances have been most wisely abandoned in this State, and the intention of the instrument to be ascertained from its language read in the light of the surrounding circumstances must be followed as the guide. (*Post, pp.* 154, 155.)

Cases cited and approved: McNairy v. Thompson, 1 Sneed, 149; Williams v. Williams, 16 Lea, 171; Fogarty v. Stack, 86 Tenn., 610.

**14. SAME.** Granting clause to grantees, "their heirs and assigns forever" conveys fee simple estate.

The granting clause of a deed reciting that the grantors, husband and wife, "bargain and sell unto" the grantees, "their heirs and assigns forever, with the exception of mine and my wife's homestead or lifetime," conveys a fee simple estate. (*Post, pp.* 139, 155, 156, 169.)

**15. SAME.** Word "assigns" imports power to sell, and creates a fee, when.

The use of the word "assigns" in the granting clause and habendum of a deed imports an intention to give the grantees the power to sell and dispose of the property, and, therefore, creates a fee simple estate. (*Post, pp.* 155-159.)

Cases cited and approved: Johnson v. Morton, 28 Tex. Civ. App., 296; Goetz v. Ballou, 64 Hun, 490.

**16. SAME.** Intention of grantor to be ascertained and enforced, regardless of formal divisions, if possible.

The rule of construction of a deed, when it is sought to determine what estate was conveyed thereby, is to ascertain the intention of the grantor, if possible, by giving to every word of the deed its appropriate meaning, and to enforce that inten-

Teague v. Sowder.

tion regardless of the mere formal divisions of the instrument. (*Post, pp.* 168, 169.)

Case cited and approved:    Bean v. Insurance Co., 111 Tenn., 186.

17.  **SAME.   Granting clause prevails over habendum, if they are irreconcilable by the context failing to show grantor's intention.**

Where the granting clause of a deed conveyed land to the grantees, "their heirs and assigns forever," with the exception of a homestead therein for the grantors, and the habendum was to the grantees "their lifetime and their to their heirs and assigns forever," the two clauses were wholly repugnant, and not being reconcilable by aid of the context showing the grantor's intention, the granting clause creating a fee simple estate will prevail over the subsequent habendum granting a less estate.   (*Post, pp.* 155-169.)

Cases cited and approved:   Caines v. Marley, 2 Yerg., 582, 584; Cains v. Jones, 5 Yerg., 254; Wall v. Ward, 2 Swan, 648, 654; Meredith v. Owens, 4 Sneed, 223, 224; Beecher v. Hicks, 7 Lea, 207; Fogarty v. Stack, 86 Tenn., 610; Graham v. Meacham, 98 Tenn., 205; Bean v. Insurance Co., 111 Tenn., 186, 189; Frank v. Frank, 120 Tenn., 569, 578, 579; and numerous cases in other jurisdictions cited in the opinion of the court, on pages 162, 163, 164, 168.

FROM  CAMPBELL.

Appeal from the Chancery Court of Campbell County.—Hugh G. Kyle, Chancellor.

Jesse L. Rogers and G. W. Montgomery, for complainants.

JOUROLMON, WELCKER & SMITH, H. B. LINDSAY, and W. A. OWENS, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this bill is to establish title to a one-eleventh undivided interest in certain lands described in the bill which the complainant Mary Tennessee Teague, wife of Minor Teague, claims under a deed from her grandfather, Duff Chadwell. It is alleged in the bill that on March 9, 1882, complainant's grandfather, Duff Chadwell, was the owner of a tract of land comprising about four thousand acres, situated in Campbell county, Tennessee, and that on said date he conveyed said lands by deed to his eleven children for life, with remainder at their deaths to their children and heirs at law. The deed referred to in the bill is as follows:

"This indenture made and entered into on this the 9th day of March, 1882, between Duff Chadwell of the first part, of the county of Campbell and State of Tennessee, of the one part, and John Chadwell, and James Chadwell, and Samuel Chadwell, and Mary Sowder and Nancy Chadwell and William Chadwell and Johnson Chadwell and Lidy Perkins and La Fayette Chadwell and Martha Teague and Robert Chadwell, of the same place, of the other part, witnesseth, that the said Duff Chadwell and wife, Elizabeth, for and in consideration

of the sum of one thousand dollars, in hand paid, the receipt whereof is hereby acknowledged, hath bargained and sold and by these presents do bargain and sell unto the said John Chadwell and James Chadwell and Samuel Chadwell and Mary Sowder and Nancy Chadwell and William Chadwell and Lidy Perkins and La Fayette Chadwell and Johnson Chadwell and Martha Teague and Robert Chadwell, their heirs and assigns forever, with the exception of mine and my wife's homestead or lifetime, the following described lands [describing them] containing three thousand acres, be the same more or less. Together with all and singular the rents and issues thereof and all the estate, right, title, interest, and demands of said Duff Chadwell and Elizabeth Chadwell, their heirs and assigns forever. To the said John Chadwell and James Chadwell and Samuel Chadwell and Mary Sowder and Nancy Chadwell and William Chadwell and Lidy Perkins and La Fayette Chadwell and Johnson Chadwell and Martha Teague and Robert Chadwell their lifetime and their to their heirs and assigns forever and the said Duff Chadwell and wife Elizabeth do hereby bind myself or ourselves to warrant and defend the title of said lands free from the lawful claims and demands of all persons whatsoever claiming or to claim the same either in law or in equity, witness whereof, I have hereunto set my hand and seal the day and year above written. In presence of witnesses. The said Duff Chadwell excepts one acre

of land and timber and rock out of this deed for the purpose of graveyard and burying purposes."

This deed was duly signed, acknowledged and registered.

Nancy Y. Chadwell mentioned in the deed was a daughter of the grantor, Duff Chadwell, and the mother of the complainant Mary Tennessee Teague. It is alleged that Nancy Y. Chadwell died in September, 1905, leaving Mary Tennessee Teague as her sole heir at law. The theory of the bill is that Nancy Y. Chadwell and the other children of Duff Chadwell were only given a life estate in said lands, and that upon the death of Nancy Y. Chadwell her life estate terminated, and complainant Mary Tennessee Teague became then entitled as remainderman under said deed to an undivided one-eleventh interest in all of said lands.

The bill further alleges that the original deed was lost, and that only a registered copy could be produced, and that the registered deed showed on its face that the lands were conveyed to the eleven children of the grantor, "their lifetime and 'their' to their heirs and assigns." It is then charged that in the original deed the word "then" appeared instead of the word "their" where it appears the second time in the above quotation, and that the word "their" was either a mistake of the draftsman or a clerical error in its registration.

The prayer of the bill is that the deed as recorded be reformed in the substitution of the word "then" for "their," and that it be established by decree that Nancy

Y. Chadwell took a life estate in an undivided one-eleventh of said land, and that complainant Mary Tennessee Teague took a remainder interest; and she also prayed for a writ of possession.

The defendants J. S. Bartlett and H. M. La Follette, who now claim to be the owners in fee of said lands, filed an elaborate answer, the other defendants adopting said answers as their defense to the bill. Defendants Bartlett and La Follette admit the execution of the deed by Duff Chadwell on March 9, 1882, to his eleven children, conveying the lands in controversy, but the insistence of defendants is that, upon a proper construction of said deed, these lands were conveyed to the eleven children in fee, and not simply for life, as claimed in complainants' bill.

It is then averred that on or about June 28, 1890, the said Nancy Y. Chadwell, who in the meantime had intermarried with one E. F. Lambdin, her husband joining in the conveyance, sold and conveyed her interest in the real estate in controversy to her brother-in-law, T. C. Perkins, with full covenants of seisin and warranty of title in fee. It is averred she received in consideration therefor the sum of $1,500, which was the full value of her interest in said estate in fee; and upon her death the complainant Mary Tennessee Teague, with full notice and knowledge of all the facts, inherited and received the estate of said Nancy Chadwell Lambdin derived from said sale. It is then averred that twelve years after the conveyance of Nancy Y.

and her husband, E. F. Lambdin, to T. C. Perkins, and after the value of said land had become greatly enhanced, Perkins and wife jointly conveyed two-elevenths of said Duff Chadwell estate to defendant Bartlett for the price of $11,385. Respondents then aver that all the children of Duff Chadwell, excepting Mary Sowder and Samuel Chadwell, have sold and conveyed their interests in said estate in fee simple; that John B. Chadwell died many years ago, and his heirs at law have sold and conveyed his one-eleventh interest in fee to defendants Dennis Bros., who now own the same; and it is true that defendants to this bill, who have purchased said lands, are denying that complainants have any right therein. The plea of innocent purchaser on the part of Bartlett and La Follette was embraced in the answer. An estoppel was also pleaded, based upon the claim that complainants had stood by and seen the defendants make valuable improvements upon the lands.

A substantial statement of the facts which are not seriously in dispute shows that the grandfather of complainant, after executing this deed March 9, 1882, continued with his wife to reside on the land until their respective deaths, which occurred in the year 1884. The complainant Mary Tennessee Teague, daughter of Nancy Y. Chadwell, was born on January 24, 1876, and was married in April, 1888, when less than thirteen years of age, and has remained a *feme covert* until the present time. It appears that her mother, Nancy Y.

Chadwell, in June, 1888, intermarried with one E. F. Lambdin. On June 28, 1890, the said Nancy Y. Lambdin and her husband, E. F. Lambdin, for the consideration of $1,500, conveyed her one-eleventh interest in these lands to Thomas C. Perkins, who had intermarried with a sister of Nancy Y. Chadwell. As already stated, this deed embraced Nancy Y.'s interest in the lands in controversy, and contained covenants of seisin, right to convey, and against incumbrances, and a warranty of title against the lawful claims of all persons whomsoever. This deed, in describing the land conveyed, refers to the deed of Duff Chadwell to his children, and describes Nancy Chadwell's interest as a "one-eleventh interest of all the lands that Duff Chadwell died seized and possessed of in said district and county." It will be remarked that the parties to this instrument speak of Duff Chadwell "having died seised and possessed" of the lands that he had conveyed March 9, 1882, to his children. It further appears that on June 10, 1902, T. C. Perkins conveyed the interest which he had acquired from his sister Nancy Y. to B. D. Bartlett for the consideration of $5,697.50. It appears, however, that, prior to the execution of this deed, the children of Duff Chadwell had caused to be apportioned among themselves the lands that were conveyed to them by their father on the 9th of March, 1882. It appears that in said partition proceeding the lot assigned to Nancy Y. Lambdin was described by metes and bounds. The deed from Thos. C. Perkins to B. D. Bartlett de-

scribes the share assigned to Nancy Y. Lambdin, and also conveys the interest of Lydia Perkins, wife of T. C. Perkins, in the lands of her father, Duff Chadwell, under said partition proceedings. It appears that D. B. Bartlett purchased these lands for his father, J. S. Bartlett, and thereafter conveyed the same to him by deed, and that thereafter he conveyed to the defendant H. M. La Follette an undivided one-third interest therein.

It should be stated that on the hearing complainants introduced proof tending to show that Duff Chadwell, at the time he executed the conveyance in question, declared in the presence of the three parties who witnessed it that it was his purpose to give his children a life estate in his lands, with remainder at their death to their respective heirs. Complainant also put in evidence a deed signed by Duff Chadwell June 8, 1881, conveying this land to his eleven children in substantially the same terms as were employed in the deed of March 9, 1882, but this deed was never delivered. An inspection of this deed, which is sent up with the record, shows that the grantor used the word "then" instead of "their" in that deed. In the premises of that deed he conveyed the land to his eleven children, "their lifetime and then at their death to their heirs and assigns forever." Another deed was also introduced, dated March 9, 1882, the same date as the deed in controversy herein, in which it appears that the grantor conveyed this land to his eleven children and "their

heirs and assigns forever," and, after the description of the land, "to his eleven children, their lifetime and then to their heirs and assigns forever." These deeds were introduced in the evidence for the twofold purpose of showing (1) that it was the fixed purpose of the grantor, existing long anterior to the execution of the deed in controversy, to convey these lands to his children for life, with remainder to their heirs at law; and (2) for the purpose of showing that the word "their" was a clerical error in copying the deed in question, since it was written plainly "then" in the other two deeds.

The real and determinative question presented on the record is whether by the deed of Duff Chadwell to his children an estate in fee or merely a life estate was conveyed.

On the hearing the chancellor was of opinion:

(1) "That the defendants D. B. Bartlett and J. S. Bartlett have made out their plea of innocent purchaser as against any claim of complainants to have the deed mentioned in the bill reformed or construed otherwise than as registered in the register's office of Campbell county, Tennessee, and so adjudged and decreed."

(2) "And the court in construing the aforesaid deed of March 9, 1882, from Duff Chadwell to his children, is of opinion that the word 'their' appearing in the *habendum* clause of said deed should be considered as a clerical error of the draftsman, made by writing the same word twice, and not considered as the word 'then'

121 Tenn.—10

as claimed by complainants. That Duff Chadwell in said deed intended in the premises to give an estate in fee simple to his eleven children, and that even conceding that by the Act of 1851-52 the conveying clause of a deed defining and limiting the estate given as an estate in fee simple may by an irreconcilable subsequent clause in the deed be made to yield so as to give a different or less estate, still the *habendum* clause, or that taking the place of the *habendum* clause in this deed, is too ambiguous and uncertain to have that effect; and that, therefore, as well as for other reasons, said deed of March 9, 1882, should be construed as granting an estate in fee simple to the eleven children of Duff Chadwell named therein. It is therefore ordered, adjudged, and decreed that complainants are not entitled to the relief sought by their bill, or to any right, title, or interest in the-land there described; but that title thereto is in the defendants, J. S. Bartlett and H. M. La Follette and others, and that complainants' bill be dismissed upon the merits."

(3) "The decree further recites that the chancellor, on the exception of defendants, excluded the two undelivered deeds, because it was sought thereby to vary or contradict the terms or reading of said deed of March 9, 1882."

Complainants excepted to the action of the court, and the original deeds were ordered to be sent up with this record for inspection, as well as copied into the transcript. The chancellor, also, on exception of de-

fendants, excluded all evidence offered by complainants seeking or tending to contradict, change, or vary the terms or words of said deed of March 9, 1882, from Duff Chadwell to his children John Chadwell and others; to which action of the court complainant excepted. The evidence excluded, as well as the exceptions, is fully set out in the decree.

The complainants appealed from the decree of the chancellor, and have assigned errors.

We will first notice the fifth assignment of error, to the effect that the chancellor erred in including testimony adduced by the complainant showing declarations made by Duff Chadwell at the time he executed the deed, and thereafter to the effect that it was his purpose to give his children merely a life estate in said lands; and in this connection will also be considered the admissibility of the two undelivered deeds, dated respectively March 9, 1882, and June 8, 1881, which were signed by Duff Chadwell, for the purpose of showing the fixed intention of the testator to convey his lands to his children only for life, and also for the purpose of showing that the word "their," used in the conveyance in controversy, was intended for the word "then." All of this evidence, as stated, was excluded by the chancellor, to which ruling complainants excepted. In this connection, also, will be considered the ruling of the chancellor in excluding proof on the part of complainant tending to show that there was no con-

sideration for the deed in question, although it purports on its face to express a consideration of $1,000.

On the first question, regarding the exclusion of parol testimony for the purpose of showing that Duff Chadwell intended an estate merely for life in his children, we think the chancellor ruled correctly. This is a case of a patent ambiguity on the face of the instrument, which may not be remedied by parol evidence. The difference between latent and patent ambiguities, and the admissibility of parol testimony in such cases, is well stated in the following authorities:

"A latent ambiguity is where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of."

"A patent ambiguity is one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain." *Weatherhead* v. *Sewell,* 9 Humph., 295.

"Ambiguity that may be removed by parol evidence is not a doubt thrown upon the intention of the party in the instrument by extrinsic proof tending to show an intention different from that manifested by the words of the instrument. It must grow out of the question of identifying the person or subject mentioned in the instrument," etc. Id.; *Harrison* v. *Morton,* 2 Swan, 469; *Gourley v. Thompson,* 2 Sneed, 391; *Eatherly* v. *Eatherly,* 1 Cold., 464, 78 Am. Dec., 499; *Horton* v. *Thompson,* 3 Tenn. Ch., 581; *Clark* v. *Clark,* 2 Lea, 725.

Says Mr. Elliott in his work on Evidence, vol. 1, sec. 600:

"It is the rule that in the interpretation of instruments, especially wills, the author's declarations of intention are inadmissible. This rule does not rest upon their immateriality or want of probative value, but upon the impolicy and danger of using such declarations or statements."

It appears that this parol evidence of conversations in which the ancestor of complainant made these declarations transpired probably twenty-five years before the present litigation. The deed itself had been recorded for a quarter of a century, and purchasers of this property could not of course be affected by the declarations made by the original grantor at the date of executing the deed. The purchaser of the property could not be required to look beyond the phraseology of the instrument itself as recorded on the register's books of the county. It is for the same reason that the two

Teague v. Sowder.

undelivered deeds claimed to have been executed by the ancestor of complainants, wherein he conveyed this property to his children, with remainder to his grand-children, are also inadmissible. These deeds were never executed, and cannot, of course, affect a purchaser who has bought the land on the faith of the deed as re-corded. The deed in controversy must therefore be construed independent of parol declarations of the orig-inal grantor and other extraneous considerations, and his intention as to the character of estate granted must be ascertained under the legal rules of construc-tion applicable to such instruments. *Davis* v. *Smith,* 9 Humph., 559.

In this connection we may as well notice the plea of innocent purchaser interposed on behalf of the defend-ants. The defendants deraigned their title by inter-mediate mesne conveyances to the original deed exe-cuted by Duff Chadwell to his children in March, 1882. These conveyances, it appears, are all recorded, and these purchasers, of course, were fixed with notice of the recitals of the deeds in their chain of title. This rule is well expressed in 2 Devlin on Deeds, section 100, as follows:

"It is a familiar principle that every person taking a deed is fixed with notice of all recitals contained in the instruments making his chain of title. The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an ex-

amination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the fact so contained."

If, therefore, the deed of Duff Chadwell to his children, under a proper construction, only conveyed to them a life estate with remainder to their children, then, that conveyance having been registered, defendants are chargeable with notice of the proper construction of that deed, and, of course, can acquire only such title as the grantees took under that instrument, albeit said grantees may have undertaken to convey a larger estate. This, of course, is axiomatic and fundamental. But it may be added that, if the context of the recorded instrument shows that the word "their" was a clerical error of the draftsman or the copyist who transcribed it on the register's books for the word "then," the defendants would be chargeable with notice thereof, and would be put on inquiry. However, we think it makes little difference in the proper construction of this deed whether the word "their" or "then" was originally employed, as the true construction of the deed must depend on other legal considerations.

We may also dispose of the question of estoppel and laches on which the defendants rely in their answer.

It is said the complainant Mary T. Teague with the other grandchildren of Duff Chadwell have silently acquiesced for nearly a quarter of a century in the use and enjoyment of this property by the purchasers from their parents as owners in fee; that they have permitted them to remove the valuable timber and sell the same without objection, and to partition the land among themselves in fee; and that they have allowed the present owners and holders to pay heavy prices for the fee in said lands, and to expend large sums in developing the land and establishing large industries thereon. But we find on an examination of the record, no act or laches on the part of the complainant Mary T. Teague that misled the defendants to their prejudice, or that was calculated to influence the defendants in their purchase of these lands. If complainant's construction of the deed is correct, she was only a remainderman, and was not called on to assert any title to the property until the falling in of the life estate.

The principle is well expressed in *McCorry's Heirs* v. *King's Heirs,* 3 Humph., 275, 39 Am. Dec., 165, as follows:

"But a remainderman or reversioner has no right or power to bring an action; he is not excused therefrom, for he cannot do it at all. His omission of it is no neglect; his postponement of it is no laches. His right to an action has not yet accrued. He cannot during the time of the tenant for life lose his estate or be barred of his right by the fault or wrong neglect or

laches of the owner of the particular estate." *Marr's Heirs* v. *Gilliam*, 1 Cold., 502; *McBroom* v. *Whitfield*, 108 Tenn., 422, 67 S. W., 794; *Dodd* v. *Benthal*, 4 Heisk., 608; *Aiken* v. *Suttle*, 4 Lea, 109.

Complainant Mary Tennessee Teague, at the time of the supposed acts of estoppel, was under the disability of infancy and coverture, and, while estoppel may be effective against a married woman, we find nothing in this record upon which to base it. The only fact proven on this subject is that, during the period covered by the sale of this real estate by Nancy Jane Chadwell (Lambdin) and its purchase by defendants, the complainant Mary was living at one time within two miles, but most of the time within five miles, of the property. This in our opinion is not a sufficient basis for an estoppel to be erected against the complainant.

In the case of *Dodd* v. *Benthal*, 4 Heisk., 601, it appeared that complainant, while an infant and a married woman, had joined in conveyances of her lands, which in the meantime passed into the hands of another party. When the complainant attained her majority and becoming discovert, it was held that she was entitled to disaffirm the deed and recover the property. The facts in that case presented a much stronger basis for an estoppel than the facts presented in the case at bar.

The disposition of these questions brings us to the consideration of the real controversy presented on the record, and that is in respect of the proper construction of the deed from Duff Chadwell to his children, and

whether they took a fee or merely a life estate in said property. It is conceded that at common law a deed to a designated person by name, omitting the use of the term "heirs," passed only a life estate, although it purported to convey the land to the grantee forever, or to him and his assigns forever. If it be conceded that the deed in question on its face purports to convey an estate in these lands to the children of Duff Chadwell for their lifetime, with remainder to their heirs, then at common law, under the operation of the rule in *Shelley's Case*, the children of Duff Chadwell would have taken the title in fee simple to the exclusion of their heirs. As is well known, this rule of the common law was abolished in Tennessee by Acts 1851-52, p. 113, c. 91, section 1, carried into Shannon's Code, section 3674, as follows:

"Where a remainder is limited to the heirs, or to the heirs of the body, of a person to whom a life estate in the same premises is given, the persons who on the termination of the life estate are heirs, or heirs of the body, of such tenant shall take as purchasers by virtue of the remainder so limited to them."

It results from this statute that if this deed, under a proper construction, conveys merely a life estate in these lands to the children of Duff Chadwell, with the remainder to the heirs, then the deed takes effect according to the terms of the statute and the intention expressed in the deed. Again, it is not necessary, as at common law, in order to pass a fee-simple estate to

the grantee, to use the word "heirs," since by Acts 1851-52, p. 40, c. 33 (Shannon's Code, section 3672), deeds "shall pass all the estate or interest of the grantor or devisor, unless an intention to pass a less estate or interest shall appear by the express terms or be necessarily implied in the terms of the instrument." The effect of these statutes is to simplify the rules of the common law on the subject of conveyances, and to give effect to the intention of the grantor in a deed when it can be fairly discovered within the four corners of the instrument.

In *Williams* v. *Williams*, 16 Lea, 171, it was said:

"We have most wisely abandoned technical rules in the construction of conveyances in this State, and look to the intention of the instrument alone for our guide, that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances."

In *McNairy* v. *Thompson*, 1 Sneed, 149, is is said:

"The intention is the governing principle of construction. In ascertaining the intention, the situation of the parties, the motives that lead to the agreement, and the objects designed to be affected by it, may all be looked to by the court. The construction must be upon the entire instrument, so that one part may help to expound the other."

Now, it is contended on behalf of the complainants that under these rules this deed conveys and vests in the children of Duff Chadwell therein named an equal un-

divided one-eleventh interest in the lands therein described for their lifetime, with the remainder to their respective heirs, and that the conveyance made by the children of Duff Chadwell conveyed only a life estate in such undivided interest. The contention on behalf of the defendants is that said deed conveys to the children of Duff Chadwell an estate in fee simple, to the entire exclusion of their heirs.

It is said on behalf of defendant, and the proposition must be conceded, that in the granting clause of this deed a fee-simple estate is conveyed in clear and unmistakable language. The rule is then invoked which was applied to wills in the case of *Meacham* v. *Graham*, 98 Tenn., 205, 39 S. W., 18, as follows:

"The rule is well settled that the courts refuse to cut down an estate already granted in fee or absolutely, when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not in themselves clear, unmistakable, and certain, so that there can be no doubt of the meaning and intention of the testator.

"If the expression in the will is doubtful, the doubt is resolved against the limitation and in favor of the absolute estate."

Again:

" . . . No slight circumstances or ambiguous words will prevent the application of the general rule; but the reason and terms must be plain, strong, and decisive in order that subsequent provisions may be held

to cut down a fee already given into a lesser estate, and the great weight of authority is in accord with this holding."

See, also, *Scruggs* v. *Murray,* 2 Lea, 44; *Carson* v. *Carson,* 115 Tenn., 46, 88 S. W., 175.

It is then insisted that the language employed in what is called the *"habendum* clause," as creating a life estate only in the children of Duff Chadwell, with remainder to their heirs, is not clear, but involved in great ambiguity. Attention is called to the phrase "their heirs and assigns forever," which immediately follows the phrase "their lifetime." It is said these words are utterly repugnant, under the rules of conveyancing and also the canons of construction relating to wills, to the idea of a lifetime estate only. These words are also used in the granting clause of the deed conveying the fee to the eleven children of Duff Chadwell, and the word "assigns" conveys the idea that the fee was to be alienable by the grantees. Now we have the same language employed in the *habendum,* where it is said a life estate only is limited to the grantees. But how could a life estate be limited to the grantees, and the life tenants at the same time given the power of alienation? It has been held in several cases that the word "assigns" would pass an estate in fee, although the context of the deed indicated a life estate only. In *Johnson et al.* v. *Morton et al.,* decided by the court of civil appeals of Texas, and reported in 28 Tex. Civ. App., 296, 67 S. W., 790, it was said:

"It is contended by appellant that the trial court erred in construing the several deeds as vesting the fee in the respective grantees therein named, and in not holding that the grantee took a life estate only in the land. The granting clause of the deed reads: 'Have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said Joseph A. Morton and Merrill Morton . . . during their natural life, and after their death to their heirs and assigns.' The *habendum* clause reads: 'To have and to hold the above granted premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Joseph A. Morton and Merrill Morton during their natural lifetime and after their death to their heirs and assigns forever.'

"It will be seen by reference to the deed that immediately following the word 'heirs' in the granting clause, and also in the *habendum* clause, appears the word 'assigns.' This word is inconsistent with the intention on the part of the grantor that the grantee shall take only a life estate, but the word 'assigns' evidences the intention on the part of the grantor to give to the grantees the power to sell and dispose of the property."

It is said, however, that this case is inapplicable in the present instance, since it was merely a ruling that the facts of that case brought it within the rule in *Shelley's Case*. It is true the court did so hold, but it also distinctly held that the word "assigns" imported

an intention to give the grantees the power to sell and dispose of the property.

In *Goetz* v. *Ballou,* 64 Hun (N. Y. 1892), 490, 19 N. Y. Supp., 433, the construction of a will was involved. The court said:

"It seems to us that the word 'assigns' in the devise to the plaintiff amounts to a grant of the power to dispose of the remainder. The expression 'to her heirs and assigns forever' must be construed as an absolute gift to her, notwithstanding the apparent words of limitation as to life contained in the preceding part of this section of the will."

It is said, therefore, that if the word "their" were changed to "then," and any effect is given to the words "their assigns forever," they give to the eleven grantees the right to convey the property, the conveyance to take effect after their death, and thus the conveyance would give the fee, since the life estate would have then terminated.

In view of these authorities, it is argued that the granting clause of the Chadwell deed clearly conveyed an estate in fee, and that the *habendum* or later clause in the deed was too ambiguous and uncertain to devise an estate thus first created. The chancellor so held.

Again, the proposition is advanced that the *habendum* clause may be reconciled with the granting clause conveying the estate in fee upon the idea that the words "their lifetime" form but part of an estate in fee, and are to be construed as entirely consistent with that

estate. Attention is called to the fact that the word "only" is not contained in the deed. Again, it is said the third part of the *habendum,* to wit, "to their heirs forever," is not only reconcilable with the previous estate in fee granted, but, by the authorities, it is the granting of an estate in fee itself. The next proposition maintained by counsel is that, if it be conceded that the *habendum* clause passes the estate in fee to the grandchildren or collateral heirs, then there would be irreconcilable conflict or repugnancy between the granting clause and the subsequent clause, and that, in such a case, the rule of the common law would apply, which is that, if the *habendum* clause is in conflict with the estate granted in the granting clause, it must be rejected. Counsel cites Blackstone's seven rules of construction of deeds and wills, the sixth being:

"In a deed, if there be two clauses so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected; where it differs from a will, for there of two such repugnant clauses, the latter shall stand, which is owing to the different natures of the two instruments; for the first deed and the last will are always most valuable in law. Yet in both cases we should rather attempt to reconcile them." 2 Blackstone, 321; 2 Parsons on Contracts, 513; Washburn on Real Property, 466; *Wall's Adm'r.* v. *Ward,* 2 Swan, 648.

A clear statement of the subject is found in Brewster on Conveyancing, section 129, as follows:

"Where each part of the deed is so drawn as to perform its office, there can almost no question arise as to the operation of the deed as a whole.

"But it is not unusual to find discrepancies between different parts of a deed, especially between the premises and the *habendum*.

"Among the most common discrepancies may be mentioned the following:

"(a)   An estate of one kind having been limited in the premises, a different estate is limited in the *habendum*.

"(b)   Different persons are named as grantees in the premises and in the *habendum*.

"(c)   It is not necessary that the premises should contain any mention of the estate to be granted; and there is indeed authority for the view that it is not only unnecessary, but improper, for the estate to be there mentioned.    Nevertheless it is very common for the estate granted to be named after the designation of the grantee in the premises.   And an intance of the first kind of discrepancy would be where the lands conveyed are stated in the premises to be granted 'to A and his heirs,' while the *habendum* is, 'To have and to hold to said A for the term of his natural life.'   In such a case, applying technical rules of construction, the *habendum* is void, as it is irreconcilable with the premises by which an estate has been already vested.   It is, therefore, a general rule that where the estate is expressly set forth in the premises it cannot be defeated by re-

121 Tenn.—11

pugnant words in the *habendum*. The *habendum* is void, and the estate as given in the premises stands."

The following cases holding this rule are set out in brief of counsel: *Bean* v. *Ins. Co.,* 111 Tenn., 189, 78 S. W., 104; *Wall's Adm'r.* v. *Ward,* 2 Swan, 654; *Meredith* v. *Owens,* 4 Sneed, 224; *Caines* v. *Marley,* 2 Yerg., 582, 584; *Cains' Lessee* v. *Jones,* 5 Yerg., 254; 4 Encyc. Dig., 306; 2 Blackstone, m. p. 381; 2 Parsons on Contracts, 513; Chitty on Contracts (9th Ed.), m. p. 90; *Frank* v. *Frank,* 120 Tenn., 569, 578, 579, 111 S. W., 1122; *Pritchett* v. *Jackson,* 103 Md., 696, 63 Atl., 965; *Winter* v. *Gorsuch,* 51 Md., 183; *Budd* v. *Brooks,* 3 Gill (Md.), 196, 43 Am. Dec., 321; *Forquarson* v. *Eichelberger,* 15 Md., 63; *Hafner* v. *Irwin,* 20 N. C., 570, 34 Am. Dec., 391; Devlin on Deeds (3d Ed.), 214, 219, 220; 3 Washburn on Real Property, 469, 466, 390; *Rines* v. *Mansfield,* 96 Mo., 394, 9 S. W., 798; *Ball* v. *Foreman,* 37 Ohio St., 141; *Berry* v. *Billings,* 44 Me., 416, 69 Am. Dec., 107; *Brown* v. *Manter,* 21 N. H., 528, 53 Am. Dec., 223; *Nightingale* v. *Hidden,* 7 R. I., 118; *Watters* v. *Bredin,* 70 Pa., 235; *Pynchon* v. *Stearns,* 11 Metc. (Mass.), 316, 45 Am. Dec., 210; *Greenbay Co.* v. *Hewett,* 55 Wis., 96, 12 N. W., 382, 42 Am. Rep., 701; *Cutler* v. *Tufts,* 3 Pick. (Mass.), 277; 1 Wood on Conv., 199, 212, 224; *Carllee* v. *Ellsberry* (Supreme Court of Arkansas, March 25, 1907), 101 S. W., 407, 12 L. R. A. (N. S.), 956.

In *Pritchett* v. *Jackson,* 103 Md., 696, 63 Atl., 965, it was said:

"While every part of a deed should be examined and construed as a whole, and the *habendum* may be used to explain the intention of the granting clause expressed in general terms, yet the *habendum* cannot be used to contradict the granting clause or cut down the estate granted thereby, but, if it conflicts therewith, must give way before it."

In Devlin on Deeds (2d Ed.), section 214, is is said:

"Where proper words of limitation are employed in the granting clause, there is no benefit to be obtained by the *habendum*. Where there is a repugnance between the words expressing the grant and the *habendum* concerning the estate the grantee is to take, the rule governing the construction of all contracts will be applied, and effect will be given to both clauses if possible. Yet where there is a definite limitation in the words of the grant, and there is a conflict between them and the *habendum*, the latter must yield. If it appears from the whole instrument that it was intended by the *habendum* clause to restrict or enlarge the estate conveyed by the words of grant, the *habendum* clause will prevail."

It is said that the court is committed to the same rule in *Bean* v. *Ins. Co.*, 111 Tenn. (3 Cates), 189, 78 S. W., 104, where a policy of insurance was before the court for construction. This court said:

"When two clauses of a contract are in conflict, the first governs rather than the last"—citing authorities.

The court then quotes from the note to *Bank* v. *Wil-*

*kin,* 95 Wis., 111, 69 N. W., 354, 60 Am. St. Rep., 86, wherein it is said:

"That when two clauses of a contract are in conflict the first governs, rather than the last, may not always apply as worded, unless the instrument is formally and systematically drawn, as in the case of deeds, which are construed by the same rules as simple contracts; that, in cases of instruments irregularly drawn, it is probably more in consonance with authority to say that if clauses of a contract are repugnant, that one which expresses the chief object and purpose of the contract must prevail, while clauses containing provisions subordinate to the chief object and purpose of the contract must give way."

While the court in *Bean* v. *Insurance Co.* was not dealing with the question of conveyancing, the rule therein announced was the same rule that was applied at common law to the construction of deeds.

Now, it is said that the Tennessee cases relied on by counsel for complainants are not discordant to the rule of common law announced in the text-writers and cases to which such copious citations have been made, but that, when properly understood, those cases recognize the existence of the rule in Tennessee. The case of *Meredith* v. *Owens,* 4 Sneed, 223, was a case where a deed of gift from a father to a daughter was under construction. The language of the deed was as follows:

"I do give a certain negro girl slave, Celia, nine years of age, to be the right and property of said Polly dur-

Teague v. Sowder.

ing her life, and for the love and affection I have for her, I give to her the aforesaid girl, Celia, to her and her heirs, to have and to hold said negro girl free from the lawful claims of all and every person whomsoever."

The court said:

"He first gives her the slave for her life, and in the next line, in the same sentence, in fee to her and her heirs. What estate does she take—for life or absolutely? . . .

"It is true, as argued by counsel for defendants, that the first clause in a deed and the last in a will must prevail when they are in conflict, but this is only where there is an irreconcilable repugnance and both cannot stand. But that is not the case here, where the latter does no more than extend and enlarge the former. It is clear, we think, that this deed conveys a fee to Polly Owen."

It will be observed that the point of the court's ruling in that case was that there was no repugnance between the premises and the *habendum*, but that the latter extended and enlarged the former. This accords with the rule laid down by Prof. Brewster in his work on Conveyancing, wherein it is said:

"Where the *habendum* is not repugnant, it may explain, qualify, and enlarge an estate granted by the premises, and in some cases it has been held that, where it does not change the estate itself which is granted by the premises, it may, within the limits of that estate,

lessen the same." Brewster on Conveyancing, sections 130, 131.

In *Beecher* v. *Hicks,* 7 Lea, 207, the conveying part of the deed was to Sarah Hicks, without limiting, defining, or stating the estate she was to take; but under the *habendum* clause the estate intended to be conveyed was limited to an estate in trust in said Catherine for herself during her lifetime, and for her children. The court recognized the general rule, and held that:

"The *habendum* is clearly not repugnant to the premises, but determines the estate granted, and only adds new grantees who take by way of remainder. Looking to the whole instrument, the mother was not entitled to take, and does not take, a direct fee, unless it be by way of trust, in which case the trust would end when its purpose was accomplished by her death."

It will be seen that this case also recognizes the common-law rules on the subject of determining the proper construction of a deed in a case of repugnance between the premises and the *habendum,* although it was found in that case that there was no repugnance.

*Fogarty* v. *Stack,* 86 Tenn., 610, 8 S. W., 846, is especially relied on by counsel for complainants as distinctly overthrowing the common-law rules for the construction of deeds. In that case it appears that the granting clause of the deed conveyed a fee to Mrs. Stack, and by the *habendum* her estate in fee was qualified as conditional fee. The court said the wife had not an absolute but only a conditional fee, liable to be defeat-

ed by her death before her husband with property un-disposed of. Judge Folk, in delivering the opinion of the court, stated that "the rule of the common law, which looked at the granting clause and the *habendum* and *tenendum* as separate and independent portions of the deed, each with its particular function and office, has long since become obsolete in this country, and certainly in this State. The true rule is to look to the whole instrument, without reference to the formal divisions, in order to ascertain the intention of the parties, and not to permit antique technicalities to override such intention. This is so not only by legislation, but by adjudication."

The court, in deciding the case, said:

"It is clear that the husband is entitled to the property upon the death of the wife. Such is manifestly the intention of the parties, and we can reach such intention without contravening any rules of law."

The construction of the deed in this case involved the consideration of two estates, one an absolute fee conveyed in the granting clause, and the other a conditional fee conveyed in the *habendum*. In the language of Mr. Brewster, section 130: "These estates being both estates of inheritance, though not identical, there is no such incompatibility between the premises and the *habendum* as to make them irreconcilably repugnant as there is in the case of a fee granted in the premises with a life estate in the *habendum*. Hence the *haben-*

*dum* may modify, and to some' extent lesser, the estate
as named in the premises."

In *Hall* v. *Wright* (decided by the supreme court
of Kentucky), 121 Ky., 16, 87 S. W., 1130, it was said:

"In construing a deed the intention of the parties as
it appears from the whole deed must·control. If the
intention appears, technical rules of construction can-
not be applied if they lead to a different result. If the
granting clause and the *habendum* are irreconcilable,
and the other parts of the deed do not make it apparent
which the grantor intended should control, it must be
said that the granting clause will prevail. But in the
deed under consideration there is not any conflict be-
tween the granting clause and the *habendum*. The
granting clause contains no words of inheritance. It
is not indicated in that clause what is to become of the
estate at his death, nor is it intimated ·that he has any
power to dispose of it. It is not granted to him and his
heirs and assigns, but to Joseph Hall alone. And when
it is stated in the *habendum* that it is to go to the chil-
dren, there is no conflict with the granting clause, but
only supplies a defect in that clause."

The court is therefore of opinion that the true rule
in such cases is to ascertain, if possible, the intention
of the grantor, giving to every word of the deed its ap-
propriate meaning, and to enforce that intention re-
gardless of the mere formal divisions of the instrument.
But when it is impossible to ascertain the intention of
the grantor, in view of the entire context, on account

Teague v. Sowder.

of repugnant and irreconcilable clauses, then the first shall prevail. *Bean* v. *Ins. Co.,* 111 Tenn., 186, 78 S. W., 104.

In the present case we find in the premises of this deed an estate in fee simple granted to the children of Duff Chadwell, while in the *habendum* said children are to have said estate their lifetime, and to their heirs and assigns forever. These two provisions of the deed are wholly repugnant, and cannot be reconciled by any aid from the context of the deed showing the intention of the grantor. In such a situation the rule is to give effect to the granting clause, and reject the *habendum* conveying a lesser estate. It results that in our opinion the children of Duff Chadwell took a fee-simple estate in this land, and the decree of the chancellor must be affirmed