Brien *v.* Robinson.

BRIEN *v.* ROBINSON.

*(Nashville.* March 16, 1899.)

1. COUNTY COURT. *Has jurisdiction to remove trustees.*

County Court has jurisdiction to remove trustees appointed by deed or will. (*Post, pp. 166–167.*)

Code construed: § 5414 (S.); § 4393 (M. & V.); § 3647 (T. & S.).

2. CODE. *Rules of construction.*

The presumption that the Code was not intended to change but only to compile the old statutes, which prevails in cases of doubtful construction, has no application or force where the Code provision is new, and its meaning perfectly plain and unambiguous. (*Post, p. 167.*)

Cases cited and approved: Bates *v.* Sullivan, 3 Head, 633; Tennessee Hospital *v.* Fuqua, 1 Lea, 611; State *v.* McConnell, 3 Lea, 338; State *v.* Runnels, 92 Tenn., 323; Trust Co. *v.* Weaver, *ante, p. 66.*

3. DEED. *Ineffectual to create a remainder, when.*

The general rule for the construction of deeds and wills undertaking to create remainders is this: If the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in him, and the limitation over is void. If the power is dependent upon a contingency, or is definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect. In order to constitute a valid remainder or executory devise, the first taker must not be given power to defeat and extinguish it, by sale or otherwise, at his will and pleasure. (*Post, pp. 168, 169.*)

Case cited and approved: Bradley *v.* Carnes, 94 Tenn., 27.

4. SAME. *Same. Example.*

A deed gives an absolute estate to the wife and nothing to the grantor's children, which conveys land to a trustee, in terms for the use of the wife for life with remainder to the children, but directs the trustee to permit her to occupy and cultivate it or rent it out, and use the usufruct or rents for any purpose she may choose, and authorizes her to give any of the property she may choose to the children, to be charged as an advancement, and further makes it the duty of the trustee, upon her written request duly witnessed, to convey the property and place its proceeds at her disposal, to be reinvested or used by her at her discretion. (*Post, pp. 160, 161, 168–170.*)

Cases cited and distinguished: Deadrick *v.* Armour, 10· Hum., 588; Bridgewater *v.* Gordon, 2 Sneed, 5; McClung *v.* McMillan, 1 Heis., 655.

5. TRUSTEE. *Authority construed as direction.*

A trustee has no discretion, but must execute conveyance when requested under a deed authorizing him to convey upon the written request of the beneficiary and to place the proceeds of the sale at the latter's disposal. (*Post, pp. 171, 172.*)

6. SAME. *Parties to removal proceedings.*

Though named as remaindermen in the deed, the grantor's children are not necessary parties to a proceeding for the removal of a trustee appointed by the deed, where it is construed as giving the absolute estate to his wife and nothing to his children. (*Post, p. 172.*)

7. RES ADJUDICATA. *Against ancestor, binds heir.*

An adjudication against the ancestor is conclusive upon the heir. (*Post, pp. 173, 174.*)

8. SHERIFF'S DEED. *Void, when.*

A Sheriff's deed is void which is based upon a levy and sale in bulk of two adjoining town lots, divided by a fence, and bearing distinct numbers, and occupied by separate houses and tenants. (*Post, pp. 174–176.*)

9. SAME. *Same.*

A Sheriff's deed will not be enforced in equity under which the execution creditor acquires, through a levy and sale made at

his special instance and direction, $3,000 to $4,000 worth of his debtor's property, under a judgment for only $750. (*Post, pp. 175, 176.*)

FROM  DAVIDSON.

'Appeal from Chancery Court of Davidson County. H. H. Cook, Ch.

Granbery & Marks for Brien.

Smith & Maddin, Wade & Sparkman, and Jno. B. Robinson & Son for Robinson.

McAlister, J.    This is an ejectment bill, brought by the heirs of M. M. and Mrs. Polly Brien against Jno. B. Robinson, B. M. Webb, the heirs of M. M. Brien, Jr., and T. A. Kercheval, to establish title to a certain house and lot in the city of Nashville.    Complainants claim title as remaindermen under a certain deed executed by M. M. Brien, Sr., on September 8, 1862, to M. M. Brien, Jr., as trustee.    The claim of Jno. B. Robinson is based on a deed executed to him on the — day of ———, 1883, by M. M. Brien, Polly Brien, and T. A. Kercheval, trustee.    B. M. Webb claims title by virtue of an alleged purchase of same at a Sheriff's sale, as the property of John B. Robinson.    The fight presented upon the record is thus a triangular one, and the contest has been waged with great ear-

nestness and ability. We proceed at once to a
consideration of the controlling questions arising upon
the record. The facts necessary to be stated, as
found by the Court of Chancery Appeals, are as
follows, to wit:

On September 8, 1862, M. M. Brien, Sr., con-
veyed to his son, M. M. Brien, Jr., among other
property, the house and lot in controversy, situated
on South Summer Street, in the city of Nashville.
After describing the property, the deed recites, viz.:
"This conveyance is made, however, for the follow-
ing uses and trusts, and for no other purpose—that
is to say, as life and the reverses of this world are
uncertain, and as I desire a comfortable and decent
support for my wife, Polly Brien, and our children,
especially our minor children, and to guarantee to
them an education, I therefore make the above con-
veyance and settlement, and direct my said trustee
to allow my said wife to take possession and con-
trol of the same, to live upon the farm, and cul-
tivate the same, or have it done, or to live upon
either lot in the city of Nashville as above conveyed
and described, and to rent out the other, or, if
thought advisable, to rent out the farm, and that she
be allowed to use any or all of the proceeds of the
farm or rent, etc., as she may see proper, for the
support and comfort of herself, the education of the
children, or other use. And, if she may so desire,
may give to any of the children aforesaid any of
said property, and, in case of a gift, it is to be

received as an advancement, as of my estate.  I desire my said son to act as trustee, as aforesaid, free of charge, to take all notes, as trustee, for the use, etc., of Mrs. Polly Brien.  In the meantime to look after and see to everything by himself or agents, but not to be responsible for neglect or waste, unless in case of gross neglect or fraud, neither of which do I fear from my said son.  This use and trust to continue during the natural life of my said wife.  It is further understood that my said wife may, at any time, in writing witnessed by two witnesses, authorize my said son to sell any or all of the real estate or slaves above conveyed, and his deed or bill of sale, made in due form as trustee, shall and is to be good and convey a legal title, the proceeds of sale, if any there be, to be held and used by my said wife, or reinvested as she may direct, and to be and bear the same relation, and to take the same course, as the above-named conveyed property.  At the death of my said wife, the remainder of said property to vest in my said children then surviving, or their representatives, according to the laws of descent, and to be equally divided among them.  This September 8, 1862.

"[SEAL.]        MANSON M. BRIEN."

It appears that in 1883 M. M. Brien, Sr., became financially embarrassed.  As guardian of the Schurer heirs a judgment had been pronounced against him, the defendant, John B. Robinson, W. B. Stokes,

18 P.—11

and other sureties on his bond, for an amount exceeding seven thousand dollars, due his wards' estate. With a view of settling this liability, Brien undertook to procure a conveyance of the Summer Street property to Robinson. It was agreed between Brien and Robinson that the latter should take the property at a valuation of $10,000, settle the Schurer judgment, and pay the balance to Mrs. Brien. Mr. Brien then procured his wife, Mrs. Polly Brien, to execute a formal written request to the trustee, M. M. Brien, Jr., to convey the Summer Street property to Robinson. The trustee positively declined to execute the conveyance. Thereupon proceedings were commenced in the County Court of Davidson County to remove him, which was accordingly done, and Thos. A. Kercheval was appointed in his stead. Mrs. Polly Brien then joined her husband, M. M. Brien, in a written request to Thos. A. Kercheval, trustee, who accordingly executed the deed. It appears that M. M. Brien also joined in this deed, and therein conveyed to Mrs. Polly Brien various lots in the city of Nashville and County of Davidson, which Mrs. Brien agreed to receive in exchange for the Summer Street property therein conveyed to Jno. B. Robinson. It appears that a second deed was executed by Thos. A. Kercheval, trustee, designed to supply certain omissions in the first deed. These deeds were duly acknowledged and registered. It appears that Robinson went into possession of the Summer Street property, and some time in 1883 ad-

vertised it for sale, whereupon an original · bill was filed in the Chancery Court at Nashville · by Thos. A. Kercheval, as trustee of Mrs. Polly Brien, and Mrs. Polly Brien by her next friend, Thos. A. Kercheval, against Jno. B. Robinson and M. M. Brien. This bill recited the execution of the trust deed to M. M. Brien, Jr., September 8, 1862, his refusal to execute the deed to Jno. B. Robinson, in accordance with the written request of Mrs. Polly Brien, his removal as trustee by the County Court, the appointment of Thos. A. Kercheval, as trustee in his stead, and the sale of the Summer Street property to Jno. B. Robinson, but the bill alleged that Robinson had not paid the Schurer judgment for $7,000. It was alleged that Mrs. Polly Brien had been unduly influenced and coerced into signing the request to the trustee to convey the Summer Street property, and that she had signed it under duress and because of threats. It was alleged that the trustee, Kercheval, had signed the deed because he supposed he had no other alternative under the written request of Mrs. Polly Brien. It was also alleged that the deed was executed under the promise of Robinson that he would make immediate payment of $3,000 into the hands of Mrs. Brien, with which she might purchase a home, which had not been done. It was further alleged that the property which M. M. Brien had conveyed to Mrs. Polly Brien, in substitution of the Summer Street property, was not owned by him, but that the title was in

third parties; that she had thereby been deceived, and her signature to the deed procured by misrepresentation, duress, and fraud. It was further alleged that Robinson had not paid the purchase money, and had not complied with his part of the contract. The bill prayed that the contract of sale to Robinson be rescinded upon the ground of fraud; but if that could not be done, that a specific performance of said contract be enforced, and that Robinson be required to pay the Schurer judgment of $7,000, and the balance, $3,000, to Mrs. Brien.

Robinson, in his answer to this bill, denied all its material allegations, but admitted he had not paid all the purchase money, averring that he was proceeding to sell· this property to raise funds with which to pay off the Schurer judgment, when he was stopped by the injunction. He averred that part of his own property had already gone in satisfaction of the Schurer debt, and other pieces had been levied on. The cause went to proof, and, on final hearing, the Chancellor granted complainants full relief. This Court, however, at its December term, 1887, reversed the decree of the Chancellor, and decreed in favor of defendant, Robinson, holding his title valid, and that he was an innocent purchaser of the property, and remanded the cause for an account as to rents, etc. On October 29, 1889, a decree was entered in the Chancery Court settling all the questions then involved, and reciting the pay-

ment of $100 as being balance in full due from Robinson.

The present bill was filed on the third of April, 1897, by the heirs of Mrs. Polly Brien, claiming the property in question under the provisions of the trust deed to M. M. Brien, Jr., executed in 1862. The bill attacks the decree of the County Court removing M. M. Brien, Jr., as trustee, and appointing Thos. A. Kercheval in his stead, for the reason that none of the beneficiaries under the deed of trust were made parties defendant or had notice of the proceedings, hence the Court was without jurisdiction and the decree was void.

It was further alleged that Mrs. Brien was induced to sign the deed under duress and threats, and that the consideration had never been paid. It was further alleged that the sale of the Summer Street property from the trustee, Kercheval, to Robinson, was without consideration, and was a violation of the trust. It appeared from the bill that Mrs. Polly Brien had died in 1892, and that complainants were her children.

Defendants, in their answer, denied all the equities of complainants' bill, and relied upon the regularity of the removal proceedings of the County Court. Robinson further averred that he purchased without notice of any equities; that he had paid the Schurer debt, and also the balance due on said purchase money. The proceedings under the bill brought by Kercheval, trustee, and Mrs. Polly Brien,

which have already been recited, are pleaded by Robinson and relied on as *res adjudicata* of the questions herein.

The cause went to proof, and, upon final hearing, Chancellor Cook dismissed the bill. The Court of Chancery Appeals reversed the decree of the Chancellor and granted complainants full relief. It is urged on behalf of complainant that the County Court had no jurisdiction to remove or appoint a trustee under a will or deed, but that its jurisdiction is restricted to the removal and appointment of trustees under assignments to secure creditors. Section 5414, Shannon's Code, provides, viz.: "The Chancery Court and County Courts have concurrent jurisdiction to accept the resignation of trustees, or to remove and appoint trustees, under the provisions of this chapter.", This section is brought forward from the Code of 1858, which was adopted and enacted into a law.

It is suggested in argument that the Act simply recites that the several Courts have—that is, at the time of the enactment of the Code into law—already the jurisdiction which the section recites they have. It is said no statement is made that the existing law is changed, but there is simply a recital of the existing law on the subject. The argument is then made that, as a matter of fact, no statute was then in existence conferring upon the County Court jurisdiction to remove and appoint trustees, and that it is a general rule of construction that in

doubtful cases it would be presumed that the Code was not intended to change, but only to compile, the old statutes. *Bates* v. *Sullivan*, 3 Head, 633; *Tennessee Hospital* v. *Fuqua*, 1 Lea, 611; *State* v. *McConnell*, 3 Lea, 338.

We think the rule announced in those cases wholly inapplicable in the present instance. We have here no statute of doubtful construction. The Act itself is perfectly plain and unambiguous. It is found in the Code of 1858, and it is wholly immaterial whether it had any existence prior to that time or not. In *State* v. *Runnells*, 92 Tenn., 323, in speaking of the Code of 1858, this Court said, viz.: "This book was adopted by the Legislature as a whole, the title and the enacting clause of the act of adoption being, viz.: 'An Act to revise the statutes of the State of Tennessee. Be it enacted by the General Assembly of the State of Tennessee: Section 1. That the general statutes of the State of Tennessee shall be as follows, to wit,'" etc. *Nashville Trust Co.* v. *Weaver*, MS., Nashville, December Term, 1898. The section of the Code in question is to be treated as if enacted at the adoption of the Code of 1858, and, in our opinion, the jurisdiction of the County Court to appoint and remove trustees is undoubted and unquestioned.

*Second.*—The Court of Chancery Appeals further held that the heirs of M. M. and Polly Brien took a vested interest in remainder in the property conveyed by the deed of trust, and were necessary

parties to any proceeding seeking to remove the
trustee and appoint his successor, and, since the
heirs were not parties to the proceeding, the order
of the County Court removing M. M. Brien, Jr., as
trustee, and substituting T. A. Kercheval, was void.
This holding of the Court of Chancery Appeals is as-
signed as error. It is insisted on behalf of defendants
that, by virtue of the deed from M. M. Brien, Sr., to
M. M. Brien, Jr., trustee, an unlimited power of dis-
position was given to Mrs. Polly Brien, the first
taker, acting through the trustee, and that as the
entire estate passed to her, she and her trustee only
were necessary parties in the matter of the removal
of the trustee. The rule announced by this Court
is viz.: If the first taker is given an estate in fee,
or for life, coupled with an unlimited power of dis-
position, the fee or absolute estate vests in the first
taker, and the limitation over is void. If the power
is dependent upon a contingency, or if the power
be definitely qualified, the estate of the first taker
is limited to life, and the remainder over takes ef-
fect. *Bradley* v. *Carnes*, 10 Pickle, citing many cases.

"The principle underlying these cases," said the
Court, "is that in order to constitute a valid re-
mainder or executory devise, the first taker must
not be given power to defeat and extinguish it, by
sale or otherwise, at his will and pleasure." The
question, then, to be determined, is whether Mrs.
Brien's power of disposition over this trust estate
was unlimited. It is argued, in the first place,

Brien *v.* Robinson.

that the intention of the grantor to create a trust is very manifest from this language, to wit: '' This conveyance is made, however, for the following uses and trusts, and for no other purpose—that is to say, as life and the reverses of this world are uncertain, and as I desire a comfortable and decent support for my wife, Polly Brien, and our children, especially our minor children, and to guarantee to them an education, I therefore make the following conveyance and settlement.'' This purpose is manifest from this language: '' This use and trust to continue during the natural life of my said wife. . . . . At the death of my said wife the remainder of my property to vest in my said children then surviving, or their representatives, according to the laws of descent, and to be equally divided among them.''

The power of disposition conferred upon the wife is found in the following provisions of the deed, to wit: '' I direct my said trustee to allow my said wife to take possession and control the same, and to live upon the farm and cultivate the same, or have it done, or to live upon the lot in the city of Nashville and to rent out the other, or, if thought advisable, to rent out the farm, and that she may be allowed to use any or all the proceeds of the farm or rent, etc., as she may see proper for the support and comfort of herself, the education of her children, or other use.''

It will be observed, the grantor does not limit

his wife's disposition of the usufruct of the trust estate to the support and comfort of herself and the education of her children, but expressly authorizes her to apply it to any "other use." Again, the deed provides: "And, if she may so desire, may give to any of the children aforesaid any of said property, and, in case of a gift, it is to be received as an advancement as of my estate." But the clause in the deed most relied on as conferring upon the wife an unlimited power of disposition, is the following: "It is further understood that my said wife may, at any time, in writing witnessed by two witnesses, authorize my said son to sell any or all of the real estate or slaves above conveyed, and his deed or bill of sale, made in due form as trustee, shall and is to be good and convey legal title; the proceeds of sale, if any there be, to be held and used by my said wife, or reinvested as she may direct, and to be and to bear the same relation and to take the same course as the above named conveyed property. At the death of. my said wife, the remainder of said property to vest in my children then surviving, or their representatives, according to the law of descent, and to be equally divided among them."

The Court of Chancery Appeals was of opinion "that the power to convey must be exercised by the trustee on the authority of the wife, in pursuance of the purposes of the trust. It could not be said that a power was here given to authorize her to dispose of the property so that the purpose of the trust

might be wholly defeated and the property removed from its operations. In any event,'' said that Court, ''her power of disposition was limited by the action and assent of the trustee. . . . As we construe the paper, the trustee was authorized, . but not compelled, 'to convey on the written request of Mrs. Polly Brien.

''The case of *Deadrick* v. *Armour*, 10 Hum., 588–594, is cited by counsel, in which it appeared that the conveyance was to a trustee for a married woman and the power given was to sell, use, and dispose of it as she may think fit, but by and with the consent of the trustee. The Court held that the power was limited and special, requiring the consent of the trustee, which was discretionary, and such as a Court of Equity would have no power to control, and consequently that the wife did not take an estate in fee but only a life estate. Counsel also rely upon the cases of *Bridgewater* v. *Gordon*, 2 Sneed, 5, and *McClung* v. *McMillan*, 1 Heis., 655.''

We cannot concur with the Court of Chancery Appeals in its construction of this instrument. It seems to us quite clear that by the terms of the deed an unlimited power of disposition is conferred upon Mrs. Brien, and the limitation over is thereby defeated. In our opinion the trustee under the deed of M. M. Brien, Sr., executed in 1862, had no discretion, but was compelled to execute a conveyance of any or all of the property whenever requested

by Mrs. Brien—provided her request was in writing and attested by two witnesses.

In our opinion the term "authorize my said son to sell any or all the real estate," etc., was equivalent to the use of the term "require" or direct, for in the immediate context it is stated that the proceeds of sale may be used by her or reinvested as she may "direct." The trustee had no power to withhold his consent, and, in this respect, the present case is wholly unlike *Deadrick* v. *Armour*, 10 Hum., 588. Nor do we think this case falls within the rule announced in *Bridgewater* v. *Gordon*, 2 Sneed, 5, and *McClung* v. *McMillan*, 1 Heis., 655.

In our opinion there was neither vested nor contingent remainder in the heirs of Mrs. Polly Brien in the property under the terms of the deed of trust, but Mrs. Polly Brien took the whole estate. It follows that in no view of the case were the heirs of Mrs. Polly Brien necessary parties to the proceeding for the removal of the trustee. Section 5422 (Shannon) provides, viz.: "The application may be made by any one of the beneficiaries." Section 5423 provides that five days' notice of the petition shall be given to the trustee. In the removal proceeding in the County Court, Mrs. Brien, the sole beneficiary, and her trustee were both parties, and and thus the requirements of the statute were fully satisfied.

The Court of Chancery Appeals found as a fact

that Robinson was no party to such duress as was exercised by M. M. Brien over his wife, Polly Brien, in procuring the execution of the deed, and that the duress was not of such a character as to threaten Mrs. Brien with personal danger, but was of such a character as to make it unpleasant and to induce her, in order to obtain peace, to execute the deeds. The Court of Chancery Appeals also found, as a matter of fact, that Robinson knew, at the time the conveyance was executed to him, that Mrs. Brien and the trustee were getting nothing in return for the property conveyed to him, unless it should be the two thousand dollars over and above the Schurer debt. It appears that the claim for the two thousand dollars was settled by the payment of back taxes on the property and by the rents that were received pending the litigation in the Kercheval case. That Court further finds there was an absolute misappropriation of the trust property by this sale and conveyance to Robinson, and that he necessarily knew of it, participating in the fraud practiced on the trust in order to secure the payment of his debt, or the liability for which he and his co-sureties were responsible, and for these reasons, said that Court, the sale to Robinson was illegal and void, certainly as to all the beneficiaries of the trust, excepting Mrs. Polly Brien, who joined in the deed.

All these questions were made, or were necessarily involved, in the former litigation between Kercheval, trustee, and John B. Robinson. Mrs. Polly

Brien was a party to that litigation, wherein the Court decided that Robinson was an innocent purchaser of the property and acquired a good title. It is true these heirs were not parties to that proceeding, but since we hold they take neither a vested nor contingent remainder in the property, they are necessarily bound by the adjudication against their ancestor.

This disposes of all the questions at issue between complainants and John B. Robinson, and results in a decree in favor of the latter, unless the claim of Judge B. M. Webb, presented by cross bill, shall be held superior to that of Robinson. As already stated, Webb claims the property as purchaser at an execution sale and by virtue of a Sheriff's deed. The proceedings under which Webb claims title are attacked on various grounds.

On February 20, 1891, defendant, B. M. Webb, together with certain other parties, recovered a judgment in the Chancery Court of DeKalb County against defendant John B. Robinson, and on June 29, 1894, an execution was issued upon this judgment to the Sheriff of Davidson County, and it was levied upon the house and lot on Summer Street as the property of John B. Robinson.

In this answer and cross bill Webb sets up the fact that the firm of Gribble, Webb & Avant obtained judgment against defendant, Robinson, in the case of *Gribble, Webb & Avant* v. *G. R. West et al.*, for about $600, in the Chancery Court at

Smithville, to which John B. Robinson was a party defendant; and that in June, 1894, execution was issued on this judgment and levied upon the property in South Nashville as the property of John B. Robinson; that it was sold on the eleventh day of August, 1894, and was bid off by cross complainant, ·Webb, at the Sheriff's sale, for about $750; that this property was never redeemed by Robinson, and that he (Webb) held a Sheriff's deed therefor, which had been filed for registration on the seventeenth day of December, 1896.

To this cross bill filed by B. M. Webb all the parties to the suit, complainants and defendants, made defense, denying the validity of the proceedings under which Webb claims title to the property.

Defendant John B. Robinson filed an elaborate answer to this cross bill, attacking in many ways the proceedings in the Chancery Court of DeKalb County.

The fourth assignment of error is that Webb acquired no title to the property in question, for the reason that his execution was levied on two town lots and they were sold in bulk and not separately. It is shown there was a house on each of the two lots worth largely more than the amount of the judgment. The return of the Sheriff was, viz.: "Executed by levying this *fi. fa.* upon all the right, title, claim, and interest that J. B. Robinson has in and to the following described property, to wit: Two lots or parcels of land in the city of Nashville, Davidson County, Tennessee, described as follows, to

wit: Fronting 67 feet on the east side of South
Summer Street and running back between parallel
lines 178 feet to an alley, and being lots Nos. 36
and 37 of Barrow Grove plan, and being the same
lots conveyed to J. B. Robinson by deeds from M.
M. Brien et al., recorded in Book 81, pp. 6 and
10, R. O. D. C., and being levied on as the property
of J. B. Robinson.'' The Court of Chancery Appeals
finds that prior to the sale to Robinson the prop-
erty was treated as one lot and occupied by the
Briens as such, and that while the Sheriff refers to
the property as made up of two lots, giving their
numbers, he levied on it substantially as one tract.
That Court further finds that the property con-
sisted of two lots; that there are two houses sepa-
rately numbered, and occupied by different tenants,
with the lots divided in the front and rear by a
fence, and that this was the condition of the prop-
erty at the time it was levied on; that there is a
frame house with six rooms, four halls, and a porch,
and a brick house with nine rooms, four halls, and
four porches. We understand the Court of Chan-
cery Appeals to find these facts from the testimony
of Jno. B. Robinson, and they are undisputed. That
Court says: ''It is true it would have been com-
petent and proper for the Sheriff to have levied on
a part of this property. He might have levied on
the south 38½ feet, but did not do so.'' We think
it would have been not only proper and competent
for the Sheriff to have so levied, but that it was

his duty to do so, and the sale in bulk of the two lots, and not separately, rendered sale void, and communicated no title to the . purchaser.

Again, aside from this, we think the levy was excessive. The judgment was for only $750, and the property levied on was worth $3,000 or $4,000; and while ordinarily the title of an outside purchaser, under the authorities, would not be affected by the fact of an excessive levy, yet we think when it is shown, as in this case, that the property was purchased by the judgment creditor, and the excessive levy was made at his especial instance and direction, then his title is affected by this act, and a Court of Equity will refuse to enforce his purchase. There are other irregularities in the proceedings which also probably invalidate Webb's title, but we prefer to rest the case upon the two grounds mentioned.

The decree of the Chancery Court of Appeals is reversed, and the original bill of complainant, as well as the cross bill of Webb, will be dismissed and the costs divided between said original and cross complainants.