TONY REMKE et al. v. A. R. REMKE et al.

Middle Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

302

Morrison & Morrison, of Lawrenceburg, for appellants.

R'obt. B. Williams and A.. M. Oehman, of Lawrenceburg, for appellees.

FAW, P. J. At the September, 1924, term of the Court of Civil Appeals at Nashville a decree of the Chancery Court of Lawrence County in this cause, in favor of the present appellees, was reversed, and the cause was remanded to the Chancery Court of Lawrence County for a rehearing, with leave to both parties to introduce such competent evidence as they desired. After pending in the Chancery

Court for several years, the case was again heard by the Chancellor on the former record and additional proof, and thereupon the Chancellor rendered a decre which was, in substance and effect, the same as his former decree. The complainants appealed from the latter decree of the Chancery Court and the case is before this court for decision of the questions raised by appellant's assignments of error.

A copy of the opinion of the Court of Civil Appeals (filed January 17, 1925) accompanied the procedendo on the remand ordered by that court, and is copied into the transcript on the present appeal. For a statement of facts and issues pertinent to the questions arising on the present appeal, we quote and adopt a part of the aforesaid opinion of the Court of Civil Appeals, as follows:

"The litigated question in this case relates to the title and ownership of a tract of land situated in Lawrence County, Tennessee, containing 153 acres which is fully described in the record, and to which we will refer as the 153-acre tract.

"The chancery court adjudged and decreed that George Pfliegel, one of the defendants, is the owner of said land, in fee simple, by virtue of a deed from his mother, the defendant Kate Remke, and that the complainants have no right, title or interest in said 153-acre tract, and the complainants' bill was dismissed, at their cost, insofar as it was sought thereby to obtain a decree adjudging that complainants are the owners of said land to the extent of an undivided four-sixths interest therein. The complainants prayed an appeal to the Supreme Court, which was granted by the trial court and perfected by the complainants. At its December term, 1923, the Supreme Court transferred the case to this court.

"Valentine Remke died intestate at his home in Lawrence County, Tennessee, on December 25, 1917. He left surviving him a widow (Mrs. Kate Remke), and his heirs-at-law consisted of five children and two grandchildren. Both Valentine Remke and his surviving widow had been married prior to their intermarriage, and each of them had four children as the issue of such previous marriage. Two children were born to them as the result of their union. All of the heirs-at-law and distributees of the estate of Valentine Remke were sui juris at the time of his death, and, on February 7, 1918, they entered into and executed a written agreement by which a full settlement and division of the personal estate of Valentine Remke was effected, and it was recited in said written contract that, as a part thereof, it was agreed and understood that Kate Remke (the widow) shall have the use and benefit of the aforesaid

153-acre tract of land, 'during her natural life, and that she or her estate shall have the benefit and use of same also for the full year in which she may die, and up to December 31st of said year.'

"The present bill was filed on February 25, 1919, to obtain a sale of the real estate of Valentine Remke, deceased, for the purpose of partition, and, to that end, to remove alleged clouds from the title of the complainants as heirs-at-law of Valentine Remke.

"The complainants are Tony Remke, Louis Remke and Martha Langenecker, children of Valentine Remke by his first marriage, and Joe Remke and Frank Remke, children of a deceased son of Valentine Remke by his first marriage. The defendants are A. R. (Adam) Remke, and Andrew R. Remke, children of Valentine Remke by his last marriage; Mrs. Kate Remke, the widow, and George H. Pfliegel, one of the children of defendant Kate Remke by her first marriage.

"It is alleged in the bill, among other averments, that said Valentine Remke died seized and possessed of three parcels of land situated in Lawrence County, Tennessee, as follows: (1) A tract of 30 acres in the 8th Civil District of said County; (2) a town lot in the town of Lawrenceburg; (3) a tract of 153 acres in the 8th Civil District of said county (the latter tract is the 153-acre tract mentioned in a preceding part of this opinion). Each of said parcels of land is fully described in the bill. Following the description of the above mentioned lands, the bill continues in these words:

" 'Complainants are informed that this last described tract of land is worth about the sum of $10,000.

" 'Complainants now state that notwithstanding the ownership of said lands by the children and grandchildren of said Valentine Remke deceased as above set out, the defendant Kate Remke widow of the said Valentine Remke, deceased, has recently and since the death of her said husband, to-wit on February 18, 1918, undertaken to convey said tract of 153 acres last above described to the defendant George H. Pfliegel by deed recorded in deed Book No. 41, page 565, in the Register's Office of Lawrence County, Tenn., a duly certified copy of which deed is herewith filed as Exhibit "B" to this bill and made a part hereof but need not be copied, and the contents of which alleged conveyance are referred to for a full understanding of the same. The said alleged conveyance recites a consideration of $4000, and also the further consideration of contributing to the support of the defendant Kate Remke, and of which $4000, it recites that $2000 is paid cash, and that the remaining $2000 is evidenced by two promissory notes due in

one and two years, and it is stated that "the support (is) to be given as she may need and demand." But complainants state that said defendant George H. Pfliegel is a nonresident of Tennessee and resides in Cincinnati, Ohio, as complainants are informed, and the defendant Kate Remke is still living upon said land. Complainants charge that the defendant Kate Remke could not make a transfer of the title to said land to her said co-defendant George H. Pfliegel, that she held no title in fee thereto, and that the said deed cannot convey title; that the defendant George H. Pfliegel obtained no title to said lands by virtue of said deed, and that said deed is a cloud upon the title of the heirs at law of Valentine Remke who are the owners of said land as hereinbefore set out, and complainants are advised that they have the right to come into your Honor's court and have said deed declared void and set aside and removed as such cloud.

" 'Complainants are informed that the defendant Kate Remke is claiming that she is entitled to execute such deed by virtue of an alleged marriage contract, but complainants deny that any such authority, right or title is vested in the defendant Kate Remke as claimed by her.'

"So far as is material to the issues arising on this appeal the prayer of the bill is as follows:

" 'That the rights, titles and interests of complainants Tony Remke, Louis Remke, Martha Langenecker, Joe Remke and Frank Remke, and defendants A. R. Remke, Andrew P. Remke and Kate Remke, in and to said 153-acre tract of land be adjudicated in accordance with the law and equity, and the rights of all the parties hereto be settled as to their respective titles in said premises, and that said alleged marriage contract claimed by the defendant Kate Remke to give her authority to convey said 153-acre tract in fee simple be set aside and declared void, and that the conveyance to George H. Pfliegel hereinbefore set forth be set aside and held for naught and the deed removed as a cloud upon the title of the said owners thereof, and that the title to said acreage be decreed to be a good and fee-simple title in the complainants and the defendants A. R. Remke and Andrew P. Remke, subject however to the life estate of Kate Remke widow of Valentine Remke deceased, and that said 153-acre tract be sold subject to the life estate of said defendant Kate Remke, for division of proceeds among the said owners.

" 'That the rights and interests of all of the parties hereto in and to the said 30-acre tract of land and said town lot, be settled and adjudicated and that same be sold including the

dower rights of defendant Kate Remke and that the proceeds thereof be divided among the parties hereto in accordance with the decree of this court, and that to this end all necessary orders of reference be had to the Clerk & Master, and that the dower interest of the defendant Kate Remke, widow of Valentine Remke deceased, be ascertained and the value thereof be paid to her in good and lawful money out of the proceeds since complainants understand from said County Court proceedings that she is willing that this be done.

" 'Grant all such other, further and general relief as complainants may be found entitled to in the cause.'

"The defendants answered the bill, and in their answer they admit that Valentine Remke died seized and possessed of the 30-acre tract and the town lot described in the bill, but they deny that Valentine Remke 'owned the 153-acre tract at the time of his death. The averments of the answer with reference to the title to the said 153-acre tract as follows:

" 'Defendant, Kate Remke, states that before her marriage to the said Valentine Remke, that she and the said Valentine Remke, entered into and made a marriage contract which is of record in Trust Deed Book "T," pages 449-451, and a copy of same is in the record but does not seem to be marked as exhibit. Said contract is dated January 9, 1893. Said defendant insists that under said marriage contract, which has been registered all these years, that the land mentioned in said contract and conveyance is the 153 acres in this suit involved, and that the title to same vested in her and in fee and that she had the right to convey to any one whom she please. That the only contingency on reversion in the said conveyance-contract of marriage was in event of her death before the said Valentine Remke's, and as he died before she did, as she is now living, that the whole fee vests in her and she has a right to do as she pleases with it, even to the giving away of same if she desires. Defendant, Katie Flegal, as the name is spelled in the said filed contract, is the same person and party as Kate Pfliegel. And that she and the said Valentine Remke were married in the year 1893 and resided together as man and wife until the death of her said husband Valentine Remke.

" 'Defendant George H. Pfliegel, has not for some years resided in Tennessee, but did at one time reside here and worked on said place and then being of age went out into the world to make a living on his own responsibility, but he was here and contracted for said land and his mother made him a deed to same—and the matter was done openly and squarely and without fraud and for the consideration as expressed in the

deed—and did actually pay the cash therein stated, and under the conditions as made and expressed and verbally understood, the price was considered adequate and sufficient. The same is valid conveyance it is affirmed and same is so insisted. At the time of the trade Mrs. Kate Remke and her two sons, A. R. Remke and Andrew P. Remke, resided on said land, and have continued to so reside, and do now so reside on said land, and it was understood in said trade and so agreed that they should remain thereon and that the same to be cultivated and farmed as said two boys are farmers and they are the half brothers of said Geo. H. Pfliegel.

" 'The defendants deny that the said deed from Mrs. Kate Remke to the said Geo. H. Pfliegel is a cloud upon anybody's title and should be removed as such, but that the same is a good and valid deed and sold for a valid consideration. And that the consideration was discussed and the same was agreed on and is considered a reasonable one with the right of support attached. And said two half brothers are put in charge of said place and are to farm and look after it and care for it. It is denied that the said deed carries no title to the said Geo. H. Pfliegel, but on the other hand it is insisted that it carries a valid and good title.

" 'It is denied that Mrs. Kate Remke has no title to convey, but it is insisted that she has a good title and the only title in and to the land, and had a right to sell, mortgage, deed or in any manner alien or incumber the property at her will and on such terms as she chose and was able to do.

" 'It is denied that the complainants or any of them have any right, claim, title or interest, in and to the said 153 acres of land, or that they have any right to recover same or have said marriage contract declared void or the deed of Mrs. Kate Remke to Geo. H. Pfliegel declared void—on the contrary it is maintained that the said deed is valid and that said marriage contract is valid and binding and that the said papers carry the full title to said land as they purport. Complainants are denied to recover in this case, except the interest in the 30 acres and said town lot.'

"By consent of all the parties, the town lot and the 30-acre tract were sold under decrees of the court, and the sales were duly confirmed, without objection.

"Proof was taken with respect to the title to the 153-acre tract and the cause was heard by Chancellor Lytle with the result before stated."

The Court of Civil Appeals then sustained an assignment of error (the second assignment) to the effect that the Chancellor erred in

allowing a copy of the alleged "marriage contract" to be filed and admitted in evidence, for the reason that the absence of the original instrument was not sufficiently accounted for to authorize the admission of secondary evidence thereof, and overruled one other assignment (the first) relating to matters of procedure.

The remainder of the aforesaid opinion of the Court of Civil Appeals is as follows:

"The third, fourth and fifth assignments of error present the contentions of the complainants with respect to the construction and effect of the 'marriage contract' (if the copy should be held competent), and these three assignments are rendered immaterial by our ruling on the second assignment, which excludes the copy of the marriage contract from the record.

"The sixth (and last) assignment of error is that, 'the Chancellor erred in his failure to grant the relief sought in the bill, and in dismissing the bill, and in adjudicating costs against the complainants, thereby in effect, wrongfully, taking the estate in remainder in the 153-acre tract of land from complainants and turning it over to a stranger, to-wit: George Pfliegel.'

"The exclusion of the copy of the 'marriage contract' (which might more properly be termed a marriage settlement) leaves no sufficient foundation in the evidence for the decree of the chancery court in favor of the defendants.

"Upon appeal in an equity case, the hearing in this court is de novo upon the transcript of the record filed. In the absence of evidence before us to support the decree below, it cannot be sustained. State ex rel. v. Colored Tenn. Industrial School, 144 Tenn. 182, 185; Hearst v. Proffit, 115 Tenn. 560, 566.

"But we see no reason why the defendants, if afforded an opportunity, may not either produce the original 'marriage contract,' or show by proper proof their inability to do so, in which latter event secondary evidence thereof will be admissible. It is a well established practice for the appellate courts to remand equity cases for additional proof, where it appears from the record presented that more satisfactory evidence can probably be obtained, which, if produced, will enable the court to reach the equities of the case. State ex rel. v. Industrial School, supra; Hearst v. Proffit, supra; Smith v. Carter, 16 Lea 537; Wood v. Neely, 7 Baxt. 586, 590; Smith v. Hinson, 4 Heisk. 250, 256; Grider v. Harbison, 6 Cold. 208, 213-214.

"This practice is expressly authorized by statute. Shan. Anno. Code, Sec. 4905.

"The decree of the chancery court will be reversed, and the cause will be remanded to the chancery court of Lawrence

County for a rehearing, with leave to both parties to introduce such competent evidence as they desire. (144 Tenn. p. 187; 115 Tenn. p. 567).

"The costs of the appeal will be adjudged against the defendants. The costs of the chancery court will await the future decrees of the Chancellor."

After the cause was remanded it was reinstated on the docket of the Chancery Court and some depositions were thereafter taken and filed. The original "marriage contract" mentioned in the pleadings was introduced in evidence, proved, and filed as an exhibit to the deposition of defendant George H. Pfliegel.

It is proper to state, in this connection, that said "marriage contract" was found in the vault of a bank at Lawrenceburg about three weeks before it was filed in evidence, and that the circumstances attending its loss and recovery are not such as to carry an implication that it was wilfully suppressed at the first trial by any of the parties to the cause, or by anyone else.

Since the remand, and while the case was pending in the Chancery Court. one of the complainants, Tony Remke, and the defendant Mrs. Kate Remke died, and the cause was revived in the names of the heirs-at-law of Tony Remke and the administrator of the estate of Mrs. Kate Remke.

The appellant's first assignment of error is that

"The lower court erred in holding that the marriage contract conveyed a fee-simple title to said tract of land of 153 acres to Kate Pfliegel Remke, and in dismissing complainant's bill. The Honorable Court should have held that the marriage contract was intended to convey, and did convey only a life estate in said land for the support of Kate Pfliegel during her lifetime, with power to her to convey same for her support and only in the event a sale was necessary for her support, and that such necessity did not arise and that the deed executed by Kate Remke to her son George Pfliegel was without authority and void, and that the lands descended to the heirs of Valentine Remke."

The disposition of appellant's first assignment of error, supra, makes it necessary for us to ascertain the proper construction and legal effect of the self-styled "marriage contract," which was executed and duly acknowledged for registration by Valentine Remke on January 9, 1893, and, was registered in the Register's Office of Lawrence County, on the same day. The original instrument has been sent up to this court as a part of the record. It was written with pen and ink, in a fairly legible handwriting, but contains a number of misspelled words and errors of grammar and punctuation. A literal copy, as nearly as we are able to transcribe the instrument in type, is as follows:

"A marridge contract between Valentine Remke and Mrs. Kattie Flegal this day made between them,

"the Partie of the first Gives Grants and conveys unto the Partie of the second for the Purpose of her mantainence so long as she may live and should the Partie of the second Part out live the partie of the first Part then she can sell or do with said Property hereafter descriebd as she wishes as it is to be her absolute Property to sell transfer or hold accordin to her own vews and arrangements that is to say, that the said Valentine Remke conveys to Kattie Flegal one tract or parcel of Land, Known as the Land where he now lives about two & ½ miles North East of Lawrenceburg and on the Military Road, an bounded on the North by Boullie on the South by G. T. Hughes, on the West by Military road, and on the East by Morebrink, and in the Eight Dis and in the county of Lawrence and state of Tennessee & 153 acres the Partie of the first Part conveys this Land to the Partie of the second Part for the Purpose of her becoming my wife and that she may have a home and suport Provided she out lives me, and after my Death to sell transfer and convey for her sole benefits so long as she may live or convey, should she wish but should she die first then the Land and all Property conveyed in this contract reverts back to the Partie of the first Part, and should the Partie of the second part die with title of this Land and other Propert in her, then Provided the maker of this Instrument is Dead the title of both land and Personal Property goes to the heirs of Valentine Remke equel, to all of them by selling and dividing Proceeds equel amonghst all his heirs now the said Valentine Remke is the Owner in fee simple of said Land has a Good right to convey the same and the same is unincumbered and futher I want to convey all my horses mules cows & calvs hogs and all my house hold and Kitchen furniture and in fact every thing that I am now Possessd of in the way of Personal Property and this all conveyed to Partie of second Part Just as the Land is conveyed and mentioned in the marridge contract between the Parties mentioned in the contract now should this marridge take Place as agreed on then this contract Good, but should their be no marridge then this contract to be nul & void, other wise in ful force and affect. this Jan 9—1893—

"Valentin Remke. (Seal)."

If, upon a consideration of the whole instrument, its meaning is apparent, the intention cannot be defeated by errors in spelling, grammar or punctuation. 2 Devlin on Deeds (2 Ed.), sections 842-844; Ewing v. Burnet, 11 Peters (U. S.) 41, 54, 9 L. Ed. 624, 630.

After the correction of manifest clerical errors in spelling and punctuation, but without any other change in the verbiage, the instrument in question reads as follows:

"A marriage contract between Valentine Remke and Mrs. Kate Pfliegel this day made between them.

"The party of the first part gives, grants and conveys unto the party of the second part for the purpose of her maintenance so long as she may live, and, should the party of the second part outlive the party of the first part, then she can sell or do with said property hereafter described as she wishes, as it is to be her absolute property, to sell, transfer or hold according to her own views and arrangements; that is to say, that the said Valentine Remke conveys to Kate Pfliegel one tract or parcel of land, known as the land where he now lives, about 2½ miles northeast of Lawrenceburg and on the Military Road, and bounded on the north by Boullie; on the south by G. T. Hughes; on the west by Military Road, and on the east by Morebrink, and in the Eighth District, and in the County of Lawrence and State of Tennessee, and 153 acres.

"And the party of the first part conveys this land to the party of the second part for the purpose of her becoming my wife, and that she may have a home and support provided she outlives me; and, after my death, to sell, transfer and convey for her sole benefit so long as she may live or convey should she wish, but, should she die first, then the land and all property conveyed in this contract reverts back to the party of the first part.

"And should the party of the second part die with title of this land and other property in her, then, provided the maker of this instrument is dead, the title of both land and personal property goes to the heirs of Valentine Remke equally, to all of them by selling and dividing proceeds equally amongst all his heirs.

"Now, the said Valentine Remke is the owner in fee simple of said land, has a good right to convey the same, and the same is unincumbered.

And further, I want to convey all my horses, mules, cows and calves, hogs, and all my household and kitchen furniture, and, in fact, everything that I am now possessed of in the way of personal property; and this all conveyed to party of second part just as the land is conveyed and mentioned in the contract.

"Now, should this marriage take place as agreed on, then this contract good, but should there be no marriage, then this contract to be null and void; otherwise in full force and effect.

"This Jan. 9, 1893.

"(Signed), Valentine Remke."

There is a controversy between counsel as to the reading of one word—and only one word—in the above quoted instrument, and that is the word which we have read as "views" in the phrase "according to her own views and arrangements." Counsel for appellants insist that this word is "needs"—that the phrase reads, "according to her own needs and arrangements"—but by comparison with the letters "v" and "n," as written in other parts of the instrument, it seems obvious that the first letter of the word in controversy is "v," and not "n," and we find that the word thus in question is "vews," which is, manifestly, the word "views" misspelled, but spelled euphonically.

The fact that the instrument, although purporting to be an agreement inter partes, is signed by only one of the parties does not render it any the less effective as a deed of conveyance. Coal Creek Mining Co. v. Heck, 15 Lea 497, 505; Caraway v. Caraway, 7 Cold. 245, 250; Campbell v. Campbell, 3 Head 325.

It cannot be doubted that there was a valuable consideration for the conveyance in controversy. "Settlements made in consideration of and previous to the marriage are considered as entered into between the parties for a valuable consideration. Marriage in contemplation of the law is not only a valuable consideration to support such a settlement, but a consideration of the highest value, and from motives of the soundest policy is upheld with a steady resolution. The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for value." 13 R. C. L., p. 1015, sec. 36. Acc. Barnum v. LeMaster, 110 Tenn. 638, 646, 75 S. W. 1045; 2 Devlin on Deeds (2 Ed.), sec. 808.

It is also clear that the instrument contains apt words to transfer title. The word "convey" in a deed will pass the title. 2 Devlin on Deeds (2 Ed.), sec. 864; Patterson v. Carneal (Ky.), 13 Am. D. 208, 211. In Tennessee, it is not necessary to use words of inheritance, as at common law, in order to pass a fee-simple estate. Shan. Code, sec. 3672; Teague v. Sowder, 121 Tenn. 132, 154, 114 S. W. 484; Davis v. Williams, 85 Tenn. 646, 651, 4 S. W. 8.

The inquiry here is, what estate or interest in the land described did the grantor intend to convey?

"The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention if practicable, when not contrary to law." 2 Devlin on Deeds (2 Ed.), sec. 836."

The above quoted text accords with the rule established in this State.

"We have most wisely abandoned technical rules in the consideration of conveyances in this State, and look to the inten-

tion of the instrument alone for our guide, that intention to be arrived at from the language of the instrument, read in the light of the surrounding circumstances." Williams v. Williams, 16 Lea 164, 171-172."

To same effect, see Speight v. Askins, 118 Tenn. 749, 102 S. W. 74; Teague v. Sowder, supra, page 155; Myers v. Comer, 144 Tenn. 475, 480, 234 S. W. 325; Dalton v. Eller, 153 Tenn. 418, 423, 284 S. W. 68.

But, where the intention is uncertain, or there is an irreconcilable repugnance between separate provisions of the deed, "resort may be had to subordinate rules of construction." Hicks v. Sprankle, 149 Tenn. 310, 314, 257 S. W. 1044; Ballard v. Farley, 143 Tenn. 161, 226 S. W. 544; Teague v. Sowder, supra, p. 168; 2 Devlin on Deeds (2 Ed.), sections 838a, 838c.

And it is a "subordinate rule of construction" that "if the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void." Bradley v. Carnes, 94 Tenn. 27, 30, 27 S. W. 1007; Brien v. Robinson, 102 Tenn. 157, 168, 52 S. W. 802; Hair v. Caldwell, 109 Tenn. 148, 155, 70 S. W. 610; McKnight v. McKnight, 120 Tenn. 431, 436, 115 S. W. 134; Bean v. Myers, 1 Cold. 226; Deaderick v. Armour, 10 Humph. 587, 593-594; Davis v. Richardson, 10 Yerg. 290.

In McKnight v. McKnight, supra (at page 436), the court said:
"It is a well-established rule of property that where a life estate is conveyed or devised, coupled with the absolute and unqualified power of disposition in the conveyee or devisee, the law converts the estate into a fee, because of the incompatibility and inconsistency of the estate given and the power of disposition of it."

Applying the rules we have stated to the conveyance here under consideration, we are of the opinion that upon the intermarriage of Valentine Remke and Kate Pfliegel the latter became vested with a determinable or base fee in the land in controversy, which became absolute upon the death of her husband in her lifetime. 10 R. C. L., p. 652, sec. 8.

If Mrs. Remke, the grantee, had died prior to the death of her husband, the grantor, her estate would have terminated, and the title would have reverted to her husband, Valentine Remke. The deed so provided, and such provision did not contravene any rules of law. (Fogarty v. Stack, 86 Tenn. 610, 613, 8 S. W. 846.) But, as Mrs. Remke survived her husband, the possibility of reverter was extinguished, and the land became "her absolute property, to sell, transfer or hold according to her own views and arrangements."

We are of the opinion that the statement in the deed in question that the conveyance to the grantee is made "for the purpose of her maintenance so long as she may live" is, when read in connection with the remainder of the instrument, merely a declaration of the grantor's motive, or reason, for making the conveyance, and was not intended as a limitation of the estate conveyed to a life estate. Motive and intention are not the same. "The legal effect of the granting words cannot be controlled by the language indicating the grantor's motive." 2 Devlin on Deeds (2 Ed.), sec. 838; Acc. Mauzy v. Mauzy, 79 Va. 537, 539; Bain v. Buff's Admr., 76 Va. 371, 375; Atkinson v. McCormick, 76 Va. 791, 800; Davis v. Bawcum, 10 Heisk. 406, 409.

It was, we think, the intention of the grantor to limit the estate conveyed to the life of Kate Pfliegel only in the event she predeceased him; and it was his intention that, if she outlived him, she should be vested with an "absolute" title to the land described, with an unlimited power of disposition thereof. Hence, as before stated, we are of the opinion that, by virtue of the conveyance in question, Mrs. Remke, upon her marriage to Valentine Remke, took a base or determinable fee, which became a fee simple upon the death of Valentine Remke leaving her surviving.

However, under the rule announced in Bradley v. Carnes, supra, and other cases in accord, it is immaterial, in view of our conclusion that Mrs. Remke was vested with an unlimited power to dispose of the land in question, whether she was given a base fee or a life estate, for "a power of unlimited disposition carries title." Turner v. Durham, 12 Lea 316, 322.

It also follows, from the unlimited power of disposition vested in Mrs. Remke, that the attempted limitation over to "the heirs of Valentine Remke" in the event Mrs. Remke should die with title to the land in her, is void.

It is true that "a fee may be conveyed determinable upon the death of the grantee . . . without having disposed of the land by deed or will." 18 C. J., p. 302; Pooley v. Webb, 3 Cold. 599, 601; Lockridge v. McCommon, 90 Tex., 234, 38 S. W., 33. But, in Bradley v. Carnes, supra, it was held that such an attempted limitation over was void by reason of an unlimited power of disposition vested in the first taker, and that, upon the death of the first taker without having disposed of the property, it descended to her heirs.

However, if the limitation over to the heirs of Valentine Remke could be given effect according to its terms, it would not change the result, for the reason that Mrs. Remke did not "die with title . . . in her," but, in her lifetime, conveyed the title to her son and co-defendant George H. Pfliegel.

The Chancellor decreed that upon the death of Valentine Remke, Mrs. Remke was vested with "the fee in said land and same was

her absolute estate to dispose of as she wished, and that in her life she deeded said land to her son George H. Pfliegel, which she had a right to do;'' and the title of George H. Pfliegel to the land in controversy was upheld as "good and valid." We concur in the Chancellor's decree and the appellant's first assignment of error is therefore overruled.

Appellant's second assignment of error is that "the lower court erred in holding said alleged marriage contract valid as a conveyance of said land. The Honorable Court should have held that inasmuch as the minds of the parties did not meet, there was no contract, and that no consideration passed, and that the alleged marriage contract was therefore void for any purpose."

Appellants seek to predicate their second assignment, supra, upon certain testimony of Mrs. Kate Remke, as follows:

"Q. 17. Why did you want the marriage contract? A. 17. It was done because I wanted the children to have something in the event Mr. Remke should die before I did.

"Q. 18. You speak of children, whose children do you mean? A. 18. The Pfliegel children; that they had as much right as the others my husband often said."

Also upon a question and answer in the testimony of the complainant's witness B. S. Waltz, as follows:

"Q. 35. Did she say at that time during this conversation that she understood that all the children were to be taken care of, after her death, meaning her children by her first marriage as well as the others? A. 35. Yes sir."

We find no merit in this assignment. The "marriage contract," which was to all intents and purposes a deed of conveyance, was executed, acknowledged, delivered, and registered, and was accepted by the grantee, Mrs. Remke, about twenty-four years before the death of Valentine Remke, the grantor, and was never renounced or repudiated by the grantee, but she at all times, both before and after Valentine Remke's death, elected to claim title through said deed. Upon these facts there is, it seems to us, no room whatever for the application of the doctrine that there can be no contract unless the minds of the parties meet. The second assignment of error is overruled. The appellant's third (and last) assignment of error is that, "the lower court erred in adjudicating costs against the complainants, and in its failure to decree a sale of said lands as prayed in the bill."

. It follows from the disposition of we have heretofore made of the preceding assignments of error that the third assignment must be, and it is, overruled.

It results that the decree of the Chancery Court is affirmed, and a decree will be entered accordingly. The costs of the appeal will

be adjudged against the appellants and the surety on their appeal bond.

Crownover and DeWitt, JJ., concur.